## In Re KENNEDY

Ohio Appeals, 8th Dist, Cuyahoga Co
No 11471. Decided Dec. 15, 1931

Irwin B. Fried, Cleveland, for plaintiff.

Henry S. Brainard, Cleveland, for defendant.

### THE FACTS ARE STATED IN THE OPINION.

VICKERY, PJ.

This cause comes into this court as an original action in mandamus by Kennedy, to compel the Clerk of the Municipal Court, Peter J. Henry, to accept a bond proffered by him to obtain his release for a violation of the parking ordinance. The Clerk, Peter J. Henry, through his deputies, declined to accept the proffered bond, which was the bond of the Grand Central Surety Company of New York which, I believe, is licensed to do business in Ohio.

We have heard the evidence of Mr. Cantillon, the deputy clerk, who has charge of that part of the work in the Criminal Branch of the Municipal Court in the City of Cleveland, and we have also heard a statement from Judge Dempsey, the Chief Justice of the Municipal Court. We rule out the evidence of Judge Dempsey as not being pertinent and proper to the issue, and so we have not regarded that part of the evidence in coming to the conclusion that we have come to in this case.

The learned attorney for the complainant admits that accepting bonds is largely a matter of discretion with the Clerk of the Municipal Court, but he claims that that discretion cannot be hampered or controlled in any way by the dictation of the court itself; that is, irrespective of the court, the acceptance and refusal of bonds is solely up to the Clerk of the Municipal Court, and it would seem from a reading of the statute that this was true.

But we apprehend that a clerk, although elected, is simply an officer of the court, to serve which it is elected, and it would be a queer proposition if an officer of the

court could not be under some control of the court. Now the record in this case shows, through the admission of counsel and the admission of statements of counsel, that this Surety Company is a New York concern incorporated for $250,000, and that it has no money or property of any kind or character in the state of Ohio. Of course, it is argued, perhaps correctly, that it does not need to have.

Suppose we grant that, yet cannot a court or an officer of that court take into consideration, when a company or person is proffered for bond, the fact that the bond might prove to be worthless? Must the clerk accept a bond because it is proffered to him? Must the court have its hands tied and let persons free upon insufficient bonds? We hardly think that that would be in the interest of a proper administration of the law. Bonds are taken for the purpose of securing the presence of the person bonded at the time that he is called into court to respond to the offense with which he is charged, and unless there be some way of reaching the bondsman in case the defendant does not appear, a bond is a mere farce and it would be much better to permit persons who get into minor difficulties to be at liberty upon their own recognizance, than to compel them to pay a bonding company organized for the purpose of profit, unless there is some assurance that when the defendant is wanted he will be produced in court and if he fails to appear, that there be some way of making the money out of the bond. In other words, a bonding company cannot be permitted to exist solely for the purpose of collecting commissions on bonds unless there is some way of making it responsible when it is sought to collect that bond, if the party is not produced in court.

Now, the matter has become so public that a court, I suppose, could almost take judicial notice of the fact that the situation in our courts in Cleveland has almost reached the state of scandal. This particular Bonding Company had forfeited several bonds, and the forfeiture still remained against it at the time it offered a bond for the release of Paul Kennedy; and the clerk, whether acting upon the suggestion or rule of court that had been adopted, or upon his own initiative,—it does not matter much,—refused to accept the bond.

It seems from the record in this case that the matter had reached such proportions in the non-collectibility of forfeited bonds, perhaps not alone with this Bonding Company, that a committee of the Municipal Court was appointed, of which Peter J. Henry was one of the members, and that committee arrived at the conclusion that a rule should be formulated. And so they formulated a rule which provided, in effect, that whenever a bondsman, whether it be a person giving real estate security, or a bonding company, whoever it might be, were in default for not paying a forfeited bond, he or it might be rejected, or perhaps should be rejected, by the clerk.

Now, Henry could have objected to these bonds himself because of his discretion in the matter, and the mere fact that he rejected them because this Bonding Company had forfeited some bonds and the forfeitures had not been paid or set aside, would be reason enough with or without a rule; and the fact that he was bolstered up and stiffness put into his backbone by reason of the rule does not affect the legal effect in any way. It still does not take away the right to exercise his own discretion, but one would think that a clerk would hardly accept a bond in face of a rule of that kind, in face of the fact that a Bonding Company had already signed some $30,000 worth of bonds, some of which it had been called upon to pay and had not paid, and in face of the fact that it had no property of any kind in the State of Ohio, and the fact that it was incorporated for only $250,000 and was doing a land office bonding business in various cities of the country and in all human probability had become liable for many times its entire capital.

One would almost think a clerk was derelict in his duty if he had accepted a bond under such circumstances, especially in view of the fact of a rule that his superiors, the court, had passed.

But coming back to the discretion: No matter what reason he gave, whether it was good, bad or indifferent, he had the discretion to refuse this bonding company, or any other bond, and I do not know of any rule which permits a court to issue a writ of mandamus to compel a man to do something which he has the discretion to do or not to do unless there is clear and convincing proof of his abuse of discretion; and in this case we think the evidence in this case and the record as presented to us, shows conclusively that he did not abuse his discretion; that he would have been abusing his discretion had he accepted this bond in face of the rule; that he would have been derelict of his duty if he had accepted this bond in view of the forfeitures that existed against this company in view of the fact that it had no property in Ohio that could be reached in any way.

We are, therefore, constrained to come to the conclusion that the complainant is not entitled to the writ of mandamus, and the

same will be refuśed and the petition dismissed.

LEVINE and WEYGANDT, JJ, concur.